FIFTH DIVISION

                                              June 30, 2000 

No. 1-98-4362

FRIENDS OF ISRAEL DEFENSE FORCES,

Plaintiff-Appellee,

v.

THE DEPARTMENT OF REVENUE OF THE STATE OF ILLINOIS and RAYMOND T. WAGNER, JR.,

Defendants-Appellants.

)

)

)

)

) )

)

)

)

)

Appeal from the

Circuit Court of

Cook County, Chancery Division

Honorable

Alexander P. White,

Judge Presiding.

JUSTICE QUINN delivered the opinion of the court:

Raymond Wagner and the Department of Revenue of the State of Illinois (collectively the Department) appeal an order of the circuit court declaring that plaintiff, Friends of Israel Defense Forces, is entitled to a charitable exemption from the Illinois Use Tax Act (35 ILCS 105/3-5 (West 1996)).

Plaintiff applied for charitable and educational exemptions from taxation under the Use Tax Act.  The Department ruled that plaintiff was not entitled to the exemptions.  Plaintiff filed a complaint for administrative review in the Cook County circuit court, claiming that as an entity organized and operated exclusively for charitable purposes it was entitled to a charitable exemption from the tax.  The circuit court reversed the Department's ruling, finding that plaintiff was a charitable organization entitled to exemption as such under the Use Tax Act.  The Department now appeals.

For the following reasons, the order of the circuit court granting the charitable exemption and reversing the ruling of the Department is affirmed.

Plaintiff is the American fund-raising branch of the Association for the Well-Being of the Israeli Soldiers (the Association), an organization operating in Israel.  Plaintiff's certificate of incorporation states the first purpose of the organization as follows:

"To advance the affairs of soldiers in Israel in the spheres of culture, welfare and social life by means of assisting in the management of institutions, including soldiers' homes, holiday villages and camps, recreation homes, hostels, clubs, restaurants, places of entertainment, cultural centres [
sic
] and other institutions in Israel as are presently and may in the future be so assisted by The Association for Welfare of Soldiers in Israel, a non-profit association, and tax exempt under the Laws of the State of Israel."

The Association uses money raised by plaintiff in several ways, one of which is to finance accommodations and recreational facilities used primarily by Israeli soldiers on leave of duty in Israel.  The facilities include dining rooms, lounges, swimming pools, saunas, and gyms.  The Association also sponsors events on military bases and builds on-base synagogues.  None of plaintiff's funds are used for military weaponry or such equipment.

The record indicates that soldiers in a military unit take leaves together, and those leaves, granted every four or five months, last four days.  Approximately 3,000 soldiers per week are accommodated at the rest and recreation centers underwritten by plaintiff's funds.  Though the centers were built primarily for the use and comfort of Israeli soldiers, they have also been used as temporary housing for Russian and Ethiopian immigrants and for American soldiers during the Gulf War.

In addition to the rest and recreation centers, plaintiff provides funding for numerous other projects.  Plaintiff contributes to summer camps for soldiers' widows and orphans and to soldier hostels.  Money is also provided for remedial education of young Israelis and immigrants, scholarships for soldiers' orphans and for soldiers leaving army service, and programs for wounded and disabled soldiers and war veterans.  Plaintiff also participates in special projects, such as the housing of civilians made homeless by Iraqi missile attacks during the Gulf War.

Plaintiff applied to the Department for charitable and educational exemptions from taxation under section 3-5 of the Illinois Use Tax Act.  35 ILCS 105/3-5 (West 1996).  Section 3-5 of the Act exempts the following from taxation:

"Personal property purchased by a governmental body, by a corporation, society, association, foundation, or institution organized and operated exclusively for charitable, religious, or educational purposes ***."  35 ILCS 105/3-5(4) (West 1996).

At the administrative hearing, the six exhibits submitted by the Department were admitted into evidence, including plaintiff's articles of incorporation, with amendments thereto, plaintiff's by-

laws, plaintiff's audited financial statement for 1991 and correspondence concerning plaintiff's application for tax-exempt status.

Plaintiff offered affidavits, all of which were excluded, verifying that five other organizations have received tax exemptions in Illinois despite the fact that all of their donations fund organizations and activities in Israel.  A lengthy program pamphlet identifying contributors to the 1993 Friends of Israel Defense Fund dinner was also excluded from evidence.  The only exhibits offered by plaintiff that were admitted into evidence were the following: 86 Illinois Administrative Code sections 130.2005 through 130.2010 and 200.155 (1996), and three pamphlets describing plaintiff-funded facilities and activities in Israel.

The Department rejected plaintiff's contention that it was entitled to an educational exemption.  Plaintiff did not ask the circuit court to review that decision, and this court will not address it here.  In addition, the Department concluded that plaintiff did not meet the statutory requirement that a charitable organization seeking exemption must benefit an indefinite number of persons or in some way reduce the burdens on government.  Plaintiff sought judicial review of the Department's decision to deny plaintiff's application for charitable exemption from the use tax in the circuit court.

The circuit court reversed the Department's decision, concluding that plaintiff's operations do benefit an indefinite number of persons.  The court stated that the Department erred in requiring plaintiff to additionally show that its operations reduced the burdens of the government of the State of Illinois.  The circuit court ruled that an applicant for a charitable exemption under the Use Tax Act may show that its operations either benefit an indefinite number of persons or that its operations in some way reduce the burdens of government.  Thus, the circuit court deemed plaintiff to be exempt from taxation under the Use Tax Act as an entity organized exclusively for charitable purposes.

The Department now appeals the ruling of the circuit court.  The Department argues that plaintiff is not entitled to a charitable exemption because it does not benefit an indefinite number of persons or reduce the burdens of Illinois government.  The Department argues further that plaintiff does not dispense benefits to all who need or apply for it and that plaintiff does not use its property exclusively for charity.  We affirm the order of the circuit court reversing the Department's ruling and granting a charitable exemption to plaintiff.

In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3-101 
et
 
seq
. (West 1998)), we review the administrative agency's decision and not the circuit court's determination.  
XL Disposal Corp. v. Zehnder
, 304 Ill. App. 3d 202, 207, 709 N.E.2d 293 (1999).  An administrative agency's decisions on questions of fact are entitled to deference and are reversed only if against the manifest weight of the evidence.  
XL Disposal
, 304 Ill. App. 3d at 207.  Questions of law decided by such an agency are not entitled to deference, however, and are reviewed 
de novo
.  
XL Disposal
, 304 Ill. App. 3d at 207.

There is a conflict in recent appellate decisions as to which standard of review applies in cases where the only question is the legal conclusion to be drawn from the facts.  In 
Richard's Tire Co. v. Zehnder
, 295 Ill. App. 3d 48, 57, 692 N.E.2d 360 (1998), the Second District held that a 
de novo
 standard of review is appropriate in such cases.  In 
XL Disposal
, 304 Ill. App. 3d at 207, the Fourth District held that the clearly erroneous standard of review is applicable in such cases.  We agree with the Fourth District's holding and with its analysis of our supreme court's holding in 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 692 N.E.2d 295 (1998).

As here, the facts in 
Belvidere
 were not in dispute.  Our supreme court held that "because this case involves an examination of the legal effect of a given set of facts, it involves a mixed question of fact and law."  
City of Belvidere
, 181 Ill. 2d at 205.  The court then held that a clearly erroneous standard of review is appropriate when mixed questions of law and fact are involved.  Prior to its holding in 
Belvidere
, our supreme court had held that, where facts were undisputed, a determination of whether property is exempt from taxation was a question of law.  
Chicago Patrolmen's Ass'n v. Department of Revenue
, 171 Ill. 2d 263, 271, 664 N.E.2d 52 (1996).  We will apply the clearly erroneous standard as enunciated in 
Belvidere
.

The clearly erroneous standard of review is between a manifest weight of the evidence standard and a 
de novo
 standard so as to provide some deference to the administrative agency's experience and expertise.  
City of Belvidere
, 181 Ill. 2d at 205.
  Under this standard, we must accept the administrative agency's findings unless we are "'left with the definite and firm conviction that a mistake has been committed.'"  
Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust
, 508 U.S. 602, 622, 124 L. Ed. 2d 539, 563-64,
 113 S. Ct. 2264, 2279 (1993), quoting 
United States v. United States Gypsum Co.
, 333 U.S. 364, 395, 92 L. Ed. 746, 766,
 68 S. Ct. 525, 541-42 (1948).
  Each claim must be determined from the facts presented.  
City of Chicago v. Illinois Department of Revenue
, 147 Ill. 2d 484, 491, 590 N.E.2d 478 (1992).  In this case, the facts surrounding plaintiff's organization are not in dispute; the issue is whether the charitable exemption provided in the Use Tax Act applies to it.  The Department's decision that the exemption does not apply must be affirmed by this court unless that conclusion is clearly erroneous.

Statutory exemptions to taxation such as the charitable exemption sought by plaintiff are to be strictly construed in favor of taxation.  
Chicago Bar Ass'n v. Department of Revenue
, 163 Ill. 2d 290, 301, 644 N.E.2d 1166 (1994).  The taxpayer seeking the exemption bears the burden of proving clearly and conclusively that it is entitled to it.  
Chicago Bar Ass'n
, 163 Ill. 2d at 300.  Furthermore, in reviewing the Department's decision, all facts and debatable questions must be construed in favor of taxation.  
Wyndemere Retirement Community v. Department of Revenue
, 274 Ill. App. 3d 455, 459, 654 N.E.2d 608 (1995).

Section 3-5(4) of the Use Tax Act provides for an exemption from taxation if the corporation purchasing property is organized and operated exclusively for charitable purposes.  35 ILCS 105/3-

5(4) (West 1996).  Despite the fact that 
Methodist Old Peoples Home v. Korzen
, 39 Ill. 2d 149, 233 N.E.2d 537 (1968), was a property tax case, the guidelines the court laid out for determining whether an entity is tax-exempt
 are also applicable to use tax cases.  
Wyndemere
, 274 Ill. App. 3d at 459.  The 
Methodist
(footnote: 1) guidelines for charitable exemptions are as follows: (1) the charity is applied for the benefit of an indefinite number of persons, persuading them to an educational or religious conviction, for their general welfare - or in some way reducing the burdens of government; (2) the charitable institution has no capital, capital stock or shareholders, earns no profit or dividends but, rather, derives its funds mainly from public and private charity and holds them in trust for the objects and purposes expressed in its charter; (3) the charitable institution dispenses charity to all who need it, does not provide gain or profit in a private sense to any person connected with it, and does not appear to place obstacles of any character in the way of those who need and would avail themselves of the charitable benefits it dispenses; (4) the fact that the institution's statements and wording of legal documents evidence an intention to use its property exclusively for charitable purposes does not relieve the institution of proving that its property actually and factually is so used; and (5) the term "exclusively used" means the primary purpose for which property is used and not any secondary or incidental purpose.  
Wyndemere
, 274 Ill. App. 3d at 459-60, citing 
Methodist
, 93 Ill. 2d at 156-57.

Further considerations regarding charitable purposes are stated in the Illinois Administrative Code (Code).  Section 130.2005 notes that "a charitable purpose may refer to almost anything which promotes the well-being of society."  86 Ill. Adm. Code §130.2005(i)(2) (1996).  However, the entity must "be organized and operated to benefit an indefinite number of the public."  86 Ill. Adm. Code §130.2005(i)(2) (1996).  The Code also notes that "[t]here may be restrictions on the group to be benefi[t]ted, but the service rendered to those eligible for benefits must, nevertheless, in some way relieve the public of a duty which it would have to such beneficiaries or otherwise confer some benefit on the public."  86 Ill. Adm. Code §130.2005(i)(2) (1996).

Section 103.2005 also recognizes that though an entity must be organized and operated "exclusively" for charitable purposes, the term is not to be interpreted literally because it is virtually impossible for an entity to be engaged "exclusively" in any one thing.  86 Ill. Adm. Code §130.2005(n)(1) (1996).  Instead, the Code states that "if a 
substantial
 purpose or activity of the purchaser is not charitable ***, the Department will not consider the purchaser to be organized and operated exclusively for charitable *** purposes within the meaning of the Act." (Emphasis added) 86 Ill. Adm. Code §130.2005(n)(2) (1996).

Even construing all facts and resolving all debatable questions in favor of taxation, we must affirm the circuit court's conclusion that the Department erroneously ruled that plaintiff was not entitled to a charitable exemption from the Illinois use tax.

The Department denied plaintiff's application for exemption because the Department found that plaintiff's activities did not reduce the burden on Illinois government or benefit the citizens of Illinois.  However, the Department's conclusion was clearly erroneous where prior decisions of Illinois courts, as well as the Department's own decisions and regulations, establish that reduction of a burden on Illinois government is not required where, as here, the charitable entity benefits an indefinite number of people.

The Department's findings clearly demonstrate that plaintiff provides benefits to an indefinite number of persons, including Israeli soldiers and their families, Russian and Ethiopian immigrants, victims of Iraqi missile attacks, American soldiers, and others, for their housing, educational, recreational, health, religious and other needs.  Plaintiff has made its facilities available to individuals outside the Israeli army and expressed its willingness to continue to do so.  There is no evidence in the record that anyone needing plaintiff's resources has been refused.  Unquestionably, plaintiff's purpose "promotes the well-being of society."

In addition, even though plaintiff's stated purpose is limited to advancing the affairs of soldiers in the Israeli army, the services rendered by plaintiff are much broader than that purpose and those services confer a benefit on the public at large.  Certainly, Israeli citizens have benefitted from the availability of plaintiff's resources.  Every Israeli citizen, at the age of 18, is required to perform three years of military service.  Thus, merely fulfilling plaintiff's stated purpose would allow it to benefit every Israeli citizen.  Furthermore, plaintiff's facilities have been used to house American soldiers, immigrants, and civilians left homeless after Iraqi missile attacks, who were given preferential treatment over Israeli soldiers.  Plaintiff also provides remedial education programs to both Israeli citizens and immigrants.  In this manner, plaintiff has demonstrated a continuing willingness to contribute to the general welfare of the entire community, not just a specific group.

The cases relied upon by the Department on appeal are distinguishable on their facts.  First, the Department cites to 
Methodist Old Peoples Home v. Korzen
, 39 Ill. 2d 149, 233 N.E.2d 537 (1968), arguing that the screening out of possible beneficiaries leads to the conclusion that an organization does not benefit an indefinite number of persons.  However, the facts in 
Methodist
 are very different from the facts in this case.  In 
Methodist
, the applicant was a retirement home that charged substantial "Founder's fees" to its residents and screened out applicants who were in poor health.  
Methodist
, 39 Ill. 2d at 152.  The court found the fact that the retirement home allocated living space based on the amount of "Founder's fees" and monthly charges paid to be "lacking in the warmth and spontaneity indicative of charitable impulse."  
Methodist
, 39 Ill. 2d at 158.  The fee-based preferential treatment coupled with the retirement home's stringent health requirements led the court to find
 that the applicant's activities did not benefit an indefinite number of persons and that there were obstacles placed in the way of those seeking its benefits.  
Methodist
, 39 Ill. 2d at 158.

Second, the Department relies on 
Wyndemere Retirement Community v. Department of Revenue
, 274 Ill. App. 3d 455, 654 N.E.2d 608 (1995), for the proposition that the placement of financial "obstacles" in the way of receiving benefits contradicts the idea that such benefits are applied to an indefinite number of persons.  However, as it was in 
Methodist
, the 
Wyndemere
 court's decision was based upon the fact that the applicant charged substantial fees to the residents of its retirement home in order for them to receive its benefits.  
Wyndemere
, 274 Ill. App. 3d at 460.  Indeed, Wyndemere had provided charitable assistance to only two residents out of the 125 units sold.  
Wyndemere
, 274 Ill. App. 3d at 457.

The facts in 
Methodist
 and 
Wyndemere
 are very different than those in the present case.  Here, the record is clear that plaintiff's benefits are available to all Israeli citizens and community members who need them.  Furthermore, there was no evidence presented at the hearing to suggest that plaintiff charges the types of fees found in 
Methodist
 and 
Wyndemere
.  As such, the foregoing cases are distinguishable on their facts.

The Department also relies on 
Gas Research Institute v. Department of Revenue
, 154 Ill. App. 3d 430, 507 N.E.2d 141 (1987).  However, this case is also distinguishable on its facts.  In 
Gas Research
, the applicant was organized by members of the natural gas industry and was overseen and operated by members of the industry.  
Gas Research
, 154 Ill. App. 3d at 436.  Its primary purpose was to enhance the position of natural gas in the energy marketplace.  
Gas Research
, 154 Ill. App. 3d at 436.  The court held that any benefits to the public were incidental and that those incidental benefits were not enough to be considered a primary charitable purpose.  
Gas Research
, 154 Ill. App. 3d at 436-37.

The present plaintiff does not have a primary purpose of benefitting members, with only incidental benefits to the public.  Plaintiff's contributors and members receive no profits from plaintiff's activities.  On the contrary, plaintiff's primary purpose is to benefit Israeli soldiers and their families in need of support.  In addition, plaintiff provides benefits to non-

military personnel in Israel who have housing and educational needs.  As such, this case can also be distinguished from 
Gas Research
 on its facts.

Illinois courts have always given an expansive interpretation to the principle of benefitting an indefinite number of persons.  In 
People ex rel. Hellyer v. Morton
, 373 Ill. 72, 25 N.E.2d 504 (1940), our supreme court found that the Morton Arboretum benefitted an indefinite number of persons and therefore its organization was entitled to tax-exempt status.  In 
Decatur Sports Foundation v. Department of Revenue
, 177 Ill. App. 3d 696, 532 N.E.2d 576 (1988), this court held that a baseball field benefitted an indefinite number of persons and was properly exempt from taxation.  In 
Lutheran General Health Care System v. Department of Revenue
, 231 Ill. App. 3d 652, 595 N.E.2d 1214 (1992), this court upheld the tax-exempt status of one building at a medical center as it benefitted an indefinite number of persons.  Finally, in 
Highland Park Women's Club v. Department of Revenue
, 206 Ill. App. 3d 447, 564 N.E.2d 890 (1990), this court found that the organization supporting the Ravinia Festival was entitled to tax- exempt status as it benefitted an indefinite number of persons.

Applying this case law to the facts of the instant case, we find that plaintiff applies its resources for the benefit of an indefinite number of persons, persuading them to an educational or religious conviction, for their general welfare.

We further find that the record supports a finding that plaintiff satisfies the remaining 
Methodist
 guidelines.  Plaintiff has no capital stock or shareholders and does not profit from any enterprise in which it engages.  Plaintiff's funds are derived exclusively from private contributions and are held in trust for the purposes set forth in its articles of incorporation.  Plaintiff dispenses charity to all who need and apply for it and does not appear to place obstacles of any character in the way of those who need and would avail themselves of the benefits it dispenses.  Plaintiff does not provide gain or profit in a private sense to any person connected with it.  In addition, the primary purpose for which plaintiff's property is used is for charitable purposes.

Based on the foregoing, we affirm the order of the circuit court granting a charitable exemption to plaintiff and reversing the clearly erroneous ruling of the Department of Revenue.

Finally, plaintiff asserted on appeal that the Department erred in refusing to consider evidence of organizations that had received tax-exempt status as charitable organizations and were similar to plaintiff in that their primary purposes were to benefit Israeli citizens.  We find it unnecessary to consider this issue because we have affirmed the order of the circuit court on other grounds.

Affirmed.

THEIS, P.J., and GREIMAN, J., concur.

FOOTNOTES
1: 
Methodist
 cited 
Crerar v. Williams
, 145 Ill. 625, 643, 34 N.E. 467 (1893).  
Crerar
 cited 
Jackson v. Phillips
, 96 Mass. 539 (1867).