Nos. 2--01--0900 & 2--01--0901 cons.

_________________________________________________________________

 IN THE 

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

DAVID SWANK and SUSAN SWANK,     ) Appeal from the Circuit Court

   ) of Winnebago County.

  )

Plaintiffs-Appellees,       )

                                 )

v.                               ) No. 00--MR–223

                                 )    

THE DEPARTMENT OF REVENUE,   ) Honorable

             ) Gerald F. Grubb

     Defendant-Appellant.        ) Judge, Presiding.

_________________________________________________________________

  )

LEONARD WILDE and SHIRLEY WILDE, ) Appeal from the Circuit Court

  ) of Winnebago.

Plaintiffs-Appellees,       )

   )

v.  ) No. 00--MR--222

  )

THE DEPARTMENT OF REVENUE        ) Honorable

                 ) Gerald F. Grubb,

     Defendant-Appellant.        ) Judge,Presiding.

_________________________________________________________________

JUSTICE BOWMAN delivered the opinion of the court:

David and Susan Swank (Swanks) and Leonard and Shirley Wilde (Wildes) applied for  property tax exemptions pursuant to section 15--35 of the Property Tax Code (Code) on the grounds that their respective properties were used for educational purposes.  35 ILCS 200/15--35 (West 2000).  The Department of Revenue of the State of Illinois (Department) denied these applications, and both parties sought judicial review.

The circuit court reversed the Department’s decision and held the properties to be tax exempt.  The Department appeals, arguing that the subject properties were "used with a view to profit" (35 ILCS 200/15--35 (West 2000)) and therefore not entitled to  property tax exemptions.  For the following reasons, we reverse the circuit court’s decision and reinstate the Department’s finding that the properties were not entitled to property tax exemptions.

I.  Background

On November 2, 1998, the Swanks applied for a property tax exemption pursuant to section 15--35 of the Code on the grounds that the property was used for educational purposes.  35 ILCS 200/15--35 (West 2000).  On November 3, 1998, the Wildes applied for a property tax exemption based on the same grounds.  The administrative law judge (ALJ) reviewed the applications submitted by the Swanks and Wildes and recommended to the Department that the requested exemptions be denied.  On March 11, 1999, the Department issued a determination finding that the subject properties were in neither exempt ownership nor exempt use.  Subsequently, the Swanks and the Wildes filed a timely notice of appeal of this denial and presented evidence at a formal administrative hearing.  On August 15, 2001, the Department adopted the hearing officer’s recommendation and denied the applications for property tax exemptions submitted by the Swanks and the Wildes.      

The findings of the ALJ, adopted by the Department, are not in dispute.  The Swanks were the sole beneficiaries of a land trust that holds title to the property identified as Winnebago County parcel index 203B-395.  The Swanks were also the sole shareholders and directors of Swank Educational Enterprises, an Illinois for-profit corporation, incorporated under the Business Corporation Act of 1983 (805 ILCS 5/1.01 (West 2000)).  Swank Educational Enterprises did business as Rockford Business College (RBC) throughout 1998.  RBC provided a number of scholastic programs and courses of study and was authorized to grant associate degrees to enrolled students.  RBC was accredited by the Accredited Council of Independent Colleges and Schools and certified by and registered with the Illinois State Board of Higher Education and the Illinois State Board of Education.  The Swanks were the directors of RBC and approved all expenditures made in the ordinary course of RBC’s business.  These expenses, including necessary equipment repairs and property taxes, were paid out of an account funded by RBC’s tuition revenues.  RBC was organized and operated exclusively for educational purposes, and the subject property was used for no purpose other than as a venue for RBC.   

The Department similarly found that the Wildes were the sole beneficiaries of a land trust that holds title to the property identified as Winnebago County parcel index 149C-031.  The Wildes were also the sole shareholders and directors of Christian Learn ‘N Care, Ltd., an Illinois for-profit corporation, incorporated under the Business Corporation Act of 1983.  In 1998, Christian Learn ‘N Care did business as Rainbow Academy and Learning Center (Rainbow Academy).  Rainbow Academy was a private elementary school certified by and registered with the Illinois State Board of Education.  The Wildes paid all of Rainbow Academy’s operating expenses, including property taxes, from an account funded by the tuition revenue.  Rainbow Academy was organized and operated exclusively for educational purposes, and the subject property was used for no purpose other than as a venue for Rainbow Academy.  

The Swanks and the Wildes filed their applications for property tax exemptions as private individuals, not as schools or for-profit corporations.  After the Department denied their applications, the Swanks and the Wildes sought judicial review on September 18, 2001.  On May 31, 2001, the circuit court reversed the Department’s decision and found that both properties in question qualified for exemption pursuant to section 15--35 of the Code (35 ILCS 200/15--35 (West 2000)).  On August 3, 2001, the Department’s timely notice of appeal from the two trial court cases followed.  The cases were consolidated on September 4, 2001, for appellate review.  

On appeal, the Department contends that its decision should be reinstated.  Specifically, the Department argues that the subject properties were "used with a view to profit" (35 ILCS 200/15--35 (West 2000)) and therefore ineligible for property tax exemptions pursuant to section 15--35 of the Code.

II.  Analysis

A Department decision that denies an application for a tax exemption is reviewable as a final administrative decision under the Administrative Review Law (735 ILCS 5/3–101 
et seq.
 (West 2000)). 35 ILCS 200/8-40 (West 2000).  It is well established by this court that our role is to review the Department’s decision and not the circuit court’s determination.  
National Data Services of Chicago, Inc. v. Director of Employment Security
, 319 Ill. App. 3d 25, 29 (2001). 

The first issue raised in this appeal is the proper construction of section 15--35 of the Code (35 ILCS 200/15--35 (West 2000)).  Interpretation of a statute is a question of law; in cases involving an agency’s interpretation of a statute that the agency is charged with administering, the agency’s interpretation is considered relevant but not binding on the court.  
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254 (1995).  Accordingly, our review of this issue is 
de novo
, with some deference accorded to the Department’s statutory interpretation.  Our supreme court has frequently acknowledged the wisdom of judicial deference to an agency’s experience and expertise.  
AFM Messenger Service, Inc., v. Department of Employment Security
, 198 Ill. 2d 380, 394 (2001).  Moreover, a significant reason for giving substantial weight and deference to an agency’s interpretation of an ambiguous statute is that " 'agencies can make informed judgments upon the issues, based on their experience and expertise.' "  
AFM Messenger Service
, 198 Ill. 2d at 394, quoting 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 98 (1992). 

At the outset, we also note that the general rule is that all property is subject to taxation unless specifically exempted by statute.  
Chicago & Northeast Illinois District Council of Carpenters Apprentice & Trainee Program v. Department of Revenue
, 293 Ill. App. 3d 600, 605 (1997).  In applying the facts of this case to section 15--35, the court must construe the statutory tax exemption narrowly and strictly in favor of taxation.  See 
First Presbyterian Church of Dixon v. Zehnder
, 306 Ill. App. 3d 1114, 1116 (1999).  In addition, the party claiming the exemption has the burden of proving clearly and conclusively that it is entitled to exemption.  
Rogy’s New Generation, Inc.  v. Department of Revenue
, 318 Ill. App. 3d 765, 771 (2000).  Finally, all facts are to be construed, and all debatable questions resolved, in favor of taxation.  
Forest Preserve District of Du Page County v. Department of Revenue
, 266 Ill. App. 3d 264, 270 (1994).       

Section 15--35 of the Property Tax Code provides:

"All property donated by the United States for school purposes, and all property of schools, not sold or leased or otherwise used with a view to profit, is exempt, whether owned by a resident or non-resident of this State or by a corporation incorporated in any state of the United States.  Also exempt is:

(a) property of schools which is leased to a municipality to be used for municipal purposes on a not-for-profit basis:

(b) property of schools on which the schools are located and any other property of schools used by the schools exclusively for school purposes, including, but not limited to, student resident halls, dormitories and other housing facilities for students and their spouses and children, staff housing facilities, and school-owned and operated dormitory or residence halls occupied in whole or in part by students who belong to fraternities, sororities, or other campus organizations;

(c) property donated, granted, received or used for public school, college, theological seminary, university, or other educational purposes, whether held in trust or absolutely[.]" 

35 ILCS 200/15--35 (West 2000).

The statutory question in this case is whether properties "used with a view to profit," even if used for educational purposes, are entitled to tax exemption under section 15--35(c) of the Code.  35 ILCS 200/15--35 (West 2000).  Stated another way, does the "used with a view to profit" exclusion of section 15--35 apply to properties falling within the parameters of section 15--35(c)?

The Swanks and the Wildes (plaintiffs) first argue that the plain language of section 15--35 mandates exemption.  According to plaintiffs’ reading of the statute, the language "not sold or leased or otherwise used with a view to profit" in the first paragraph of section 15--35 (35 ILCS 200/15--35 (West 2000)) is plainly read to apply when a school sells, leases, or uses property for a profit "unrelated to schooling."  In line with that reasoning, plaintiffs state that sections 15--35(a) and 15--35(b) exempt the property of schools, whether or not the schools are for profit, as long as the property is exclusively used for school purposes. Similarly, plaintiffs argue that section 15--35(c) exempts any privately held property, whether or not it is for profit, as long as it is devoted exclusively to school purposes.  Plaintiffs believe that the word "otherwise" modifies the term "school" and that it is only when a property’s use diverges from schooling that the profit motive destroys the exemption.  In short, according to plaintiffs’ interpretation, section 15--35 does not prohibit a for-profit school or for-profit entity from gaining an exemption so long as the property’s sole use is school related.  

It is the Department’s position that any property used with a view to profit, even if used for educational purposes, is excluded from the section 15--35 tax exemption.  The Department maintains that the word "otherwise," as used in the statute, modifies the term "used," thereby encompassing all uses of the property with a "view to profit" other than, or different from, selling or leasing it.  We agree with the Department.

The primary rule of statutory construction is to give effect to legislative intent by first looking at the plain meaning of the language.  
Davis v. Toshiba Machine Company, America
, 186 Ill. 2d 181, 184 (1999).  In addition, where the language of a statute is clear and unambiguous, a court must give it effect as written, without reading into it exception, limitations or conditions that the legislature did not express.  
Davis
, 186 Ill. 2d at 184-85.  Under plaintiffs’ reading of the statute, the section 15--35 exclusion of property "used with a view to profit" applies only in instances where the property is not used for educational purposes.  As we understand plaintiffs’ argument, the phrase "otherwise used with a view to profit" means "unrelated to schooling."  However, no language in the statute supports such an interpretation.  While we agree with plaintiffs’ contention that the plain language of section 15--35 limits tax exemption to property used for "school purposes," we also believe that the plain language excludes property "used with a view to profit."   As the Department states, section 15--35  is clear that property of schools cannot be "sold" with a view to profit, "leased" with a view to profit, or "otherwise used with a view to profit."  35 ILCS 200/15--35 (West 2000).  

Moreover, we reject plaintiffs’ reading of the word "otherwise" to be a modification of the term "school."  The "last antecedent rule" of statutory construction requires that relative or qualifying words, phrases, or clauses are to be applied to the words immediately preceding, and do not modify words, phrases, or clauses that are more remote.  
People v. Storms
, 254 Ill. App. 3d 139, 141 (1993).  Section 15-35 reads, "All property donated by the United States for school purposes, and all property of schools, not sold or leased or otherwise used with a view to profit, is exempt ***."  35 ILCS 200/15--35 (West 2000).  According to Black’s Law Dictionary, "otherwise" means "[i]n a  different manner; in another way, or in other ways."  Black’s Law Dictionary 1101(6th ed. 1990).  Thus, the term "otherwise" refers to all uses of the property "with a view to profit" other than, or different from, selling or leasing it.  This would include property devoted to school purposes, if used with a "view to profit."

In addition, we reject plaintiffs’ argument that the "view to profit" language in section 15--35 need not apply to section 15--35(c).  According to plaintiffs’ interpretation of the statute, the section 15--35 exclusion of property "otherwise used with a view to profit" only applies if the property is not used for educational purposes.  If we understand plaintiffs’ interpretation correctly, section 15--35(c) does not contain the "view to profit" language because it only addresses property used for "educational purposes."  For the reasons stated earlier, we reject plaintiffs’ statutory interpretation of the language "otherwise used with a view to profit."  Assuming that "otherwise used with a view to profit" means exactly what it says, and not "unrelated to schooling," as plaintiffs assert, we believe it must be read in conjunction with section 15--35(c).  

A statute should be evaluated as a whole, with each provision construed in connection with every other section.  
Paris v. Feder
, 179 Ill. 2d 173, 177 (1997).  Although the Department concedes that section 15--35(c) does not expressly contain the "used with a view to profit" language, it argues that section 15--35(c) cannot be read consistently with section 15--35 unless it is read in conjunction with that language.  Otherwise, according to the Department, section 15--35(c) largely subsumes the exemption in the first paragraph of section 15--35, substantially diminishing the effect of the plain language of that provision.  We agree.  

Section 15--35 provides that property "used with a view to profit" does not qualify for the exemption.  To read section 15--35(c) without the "view to profit" language would bring property used for educational purposes and with a "view to profit" within the exemption.  We agree with the Department that this reading would have the effect of mitigating the "view to profit" exclusion of section 15--35.  Accordingly, we believe that section 15--35(c) excludes from tax exemption property held for profit, even if used for school purposes. 

Likewise, we are not persuaded by plaintiffs’ next argument that for-profit status does not bar tax exemption.  Plaintiffs cite the burial purposes exemption for the proposition that the legislature has established property tax exemptions favoring for-profit enterprises.  The burial purposes statute states, "All property used exclusively as graveyards or grounds for burying the dead is exempt."  35 ILCS 200/15--45 (West 2000).  However, the Department does not deny that the legislature has created tax exemptions applicable to for-profit corporations.  Instead, the Department’s position is that this particular provision of the Code does not apply to for-profit corporations.  Moreover, we agree with the Department that had the legislature intended that for-profit corporations be exempt under section 15--35, it would not have included the "view to profit" language.

Finally, we reject plaintiffs’ last argument that public policy supports tax exemption for private, for-profit property devoted to educational purposes.  Plaintiffs assert that the legislature enacted section 15--35 with the following ideas in mind:  (1) property of schools is presumptively exempt, unless it is put to a profitable purpose other than schooling; and (2) property devoted solely to schooling is exempt, regardless of ownership or whether a profit is made.  We disagree.  First, plaintiffs’ reasoning contradicts the litany of cases providing that tax-exemption statutes in Illinois are to be construed narrowly.  Second, while Illinois policy may favor those private institutions that provide some substantial part of the educational training that otherwise would be furnished by publicly supported schools (
People ex rel Brenza v. Turnverein Lincoln
, 8 Ill. 2d 198, 202-203 (1956)), that is not the case here.  In this situation, plaintiffs are individual property owners and the sole shareholders of for-profit corporations that provide educational services.  Thus, plaintiffs are using their property with a "view to profit," which prevents exemption under section 15--35.  Finally, plaintiffs are unable to cite any authority for their proposition that the legislature intended for-profit entities to receive tax exemptions under section 15--35 of the Code.  As a result, we decline to interpret section 15--35 as providing tax exemption to property used by a for-profit corporation for educational purposes.  

In sum, we believe that the "view to profit" language in the first paragraph of section 15--35 applies to section 15--35(c).  This interpretation follows the mandate that tax-exemption provisions be construed narrowly (
Forest Preserve
, 264 Ill. App. 3d at 270), and it gives the appropriate deference to the Department’s application of the statute, which it is empowered to enforce (
Abrahamson
, 153 Ill. 2d at 97-98).                           

Having determined that the "view to profit" language in section 15--35 applies to section 15--35(c), we turn now to the ultimate issue of whether plaintiffs are entitled to receive property tax exemptions under section 15--35.  For the following reasons, we affirm the Department’s decision denying plaintiffs’ applications for tax exemptions.   

Before addressing the merits of this issue, we must first determine the applicable standard of review.  The parties disagree as to what standard of review should be applied.  Plaintiffs argue that this case is a question of law, requiring 
de novo
 review.  They rely on 
Chicago Patrolmen’s Ass'n v. Department of Revenue
, 171 Ill. 2d 263, 271 (1996), which held that a determination of whether property is exempt from taxation is a question of law.  The Department argues that this case involves a mixed question of law and fact and should be reviewed under the more deferential "clearly erroneous" standard as articulated in 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205 (1998).  

 
The Department acknowledges that this court, in 
Lena Community Trust Fund, Inc. v. Department of Revenue
, 322 Ill. App. 3d 884, 887 (2001), relied on 
Chicago Patrolmen's Ass'n
 in declining to apply the "clearly erroneous" standard to an administrative review of a tax exemption decision.  In 
Lena
, this court stated:

"Although our supreme court discussed in [
City of
] 
Belvidere
 how the 'clearly erroneous' standard might apply in administrative review cases generally, it did not specifically discuss the application of the 'clearly erroneous' standard to property tax exemption cases.  The question of the standard of review for property tax exemption cases was clearly decided by our supreme court in 
Chicago Patrolmen's Ass'n
, which has not been overruled."  
Lena Community Trust Fund, Inc.
, 322 Ill. App. 3d at 887.

The Department contends that our reading of 
City of Belvidere
 was too narrow and that 
City of Belvidere
 implicitly overruled 
Chicago Patrolmen
 with regard to the appropriate standard of review.  In 
City of Belvidere
, the Illinois State Labor Relations Board (Board) determined that the city had committed an unfair labor practice when it refused to bargain with the firefighters’ union over the city’s decision to contract out paramedic services to a private company.  
City of Belvidere
, 181 Ill. 2d 191.  Because the case involved an examination of the legal effect of a given set of facts, our supreme court concluded that it involved a mixed question of fact and law.  
City of Belvidere
, 181 Ill. 2d at 205.  The court then held that a clearly erroneous standard of review was appropriate to examine the Board’s decision, stating that "the applicable standard of review should be between a manifest weight of the evidence standard and a 
de novo
 standard so as to provide some deference to the Board’s experience and expertise."  
City of Belvidere
, 181 Ill. 2d at 205.  

In addition, the Department argues that the supreme court later applied the 
City of Belvidere
 clearly erroneous standard to an administrative review of an unemployment benefits case.  
AFM Messenger Service
, 198 Ill. 2d at 391-2.  The Department argues that, because
 our supreme court applied the clearly erroneous standard to a situation not explicitly addressed in 
City of Belvidere
, so too should this court apply the clearly erroneous standard in the present case.  Finally, the Department maintains that this court has been willing to apply the clearly erroneous standard from 
City of Belvidere
 in other contexts, such as a determination by the Department of Employment Security that certain workers were "employees" and not independent contractors for purposes of unemployment compensation.  
National Data Services of Chicago
, 319 Ill. App. 3d at 29.  In light of our supreme court’s most recent application of the clearly erroneous standard in 
AFM Messenger Service
, we agree with the Department.  
AFM Messenger Service
, 198 Ill. 2d at 391-92.

A mixed question of law and fact is one involving an examination of the legal effect of a given set of facts.  
AFM Messenger Service
, 198 Ill. 2d at 391.  In 
City of Belvidere
, our supreme court treated the Board's determination as a mixed question of fact and law, stating that the "issue presented in this case cannot be accurately characterized as involving solely a question of fact or a question of law."  
City of Belvidere
, 181 Ill. 2d at 205.  Similarly, in 
AFM Messenger Service
, our supreme court characterized the Department of Employment Security’s decision as a mixed question of law and fact.  
AFM Messenger Service
, 198 Ill. 2d at 392.  The court reasoned that the decision was, in part, factual because it involved considering whether the facts supported the agency's finding that the AFM drivers were employees and not independent contractors.  
AFM Messenger
 198 Ill. 2d at 392.  Nevertheless, the Department of Employment Security's decision was also a question of law because the three statutory requirements for independent contractor status are comprised of legal terms that require interpretation.  
AFM Messenger
, 198 Ill. 2d at 392.  While we have a difficult time imagining any case not involving the examination of the legal effect of a given set of facts, we will apply the clearly erroneous standard set forth by our supreme court in 
City of Belvidere
 and 
AFM Messenger Service
.  We believe this to be the intention of our supreme court in stating:

"As a final matter, we note that this court has reviewed other decisions of the Department which raised issues similar to those present here under a manifest weight of the evidence standard. [Citations.]  These cases, however, predate 
City of
 
Belvidere
.  Further, there is no indication in these cases that a party raised the possibility that the administrative decision under review may have presented a mixed question of law and fact.  Here, the Department raised that possibility."  
AFM Messenger Service
, 198 Ill. 2d at 395-96.            

In the present case, we agree with the Department that its decision was in part factual because it required the Department to determine whether the facts indicated that the subject property was used for educational purposes and whether it was used with a "view to profit."  In addition, we agree that the determination was in part a question of law because it required the Department to construe the scope of the tax exemption, which is statutorily defined and requires interpretation.  Accordingly, we hold that, because the Department’s decision presents a mixed question of law and fact, the agency decision will be deemed "clearly erroneous" only where the reviewing court, on the entire record, is " 'left with the definite and firm conviction that a mistake has been committed.' "  
AFM Messenger Service
, 198 Ill. 2d at 393, quoting 
United States v. United States Gypsum Co.
, 333 U.S. 364, 369, 92
 
L. Ed. 2d 746, 766, 68 S. Ct. 525, 542 (1948)

Turning now to the merits, the Department held that private individuals who hold title to property used by a for-profit corporation to operate a school were not the intended beneficiaries of the section 15--35 tax exemption.  The Department argues that its decision to deny plaintiffs’ exemption requests was not clearly erroneous since the subject properties, though used for educational purposes, were used with a "view to profit."  We agree.

Plaintiffs contend that the test is use, not ownership, in determining whether an applicant is entitled to property tax exemptions.  However, we agree with the Department that the use of the property in question, though found to be for educational purposes only, is not dispositive in this case.  Instead, it is the finding that the properties were "used with a view to profit," which plaintiffs do not dispute, that prevents tax exemption.  Moreover, in instances where use of the property was the dispositive factor under section 15--35, the exemption applicant was not a for-profit corporation.  

Plaintiffs first rely on 
Oasis, Midwest Center for Human Potential v. Rosewell
, 55 Ill. App. 3d 851, 856 (1977), for the proposition that the test is use, not ownership.  However, the entity seeking tax exemption in that case was incorporated on a not-for-profit basis.  
Oasis
, 55 Ill. App. 3d at 853.  Similarly, in 
Illini Media Co. v. Department of Revenue
, 279 Ill. App. 3d 432, 433 (1996), Illini Media was a multimedia, not-for-profit corporation that served the University of Illinois.  In that case, the court found that any revenue generated was incidental.  
Illini Media
, 279 Ill. App. 3d at 437.  Plaintiffs also cite 
Big Ten Conference, Inc. v. Department of Revenue
, 312 Ill. App. 3d 88 (2000), where the court found that the Big Ten Conference was not a "school," but was still eligible for tax exemption under section 15--35 since the property was used for educational purposes.  Again, this case is not controlling because the Big Ten Conference is a not-for-profit corporation, although this point is not discussed in the opinion.  Likewise, in 
Ass'n of American Medical Colleges v. Lorenz
, 17 Ill. 2d 125, 126 (1959), the Association was a not-for-profit corporation whose general purpose was to improve medical education in the United States.  Finally, 
People ex rel. Goodman v. University of Illinois Foundation
, 388 Ill. 363 (1944),
 does not support plaintiffs’ position.  In that case, the applicant was not for profit, and the supreme court stated that "[n]o part of these receipts, income or fees, it is agreed, inures to the benefit of any member or officer of the Foundation."  
Goodman
, 388 Ill. at 369. This is not the case here.  It is undisputed that plaintiffs were in business to earn profit for themselves as the sole shareholders and directors of for-profit corporations.  

In sum, we are not left with the definite and firm conviction that a mistake has been committed, as required under the clearly erroneous standard.  
AFM Messenger Service
, 198 Ill. 2d at 393.  As stated earlier, none of the cases cited by plaintiffs address whether for-profit corporations are entitled to tax exemptions under section 15--35.  In following the mandate that the court must construe the statutory tax exemption narrowly and strictly in favor of taxation (
First Presbyterian Church of Dixon
, 306 Ill. App. 3d at 1116), we decline to extend tax exemption under section 15--35 to properties held for profit, even if they are used for educational purposes.    

Accordingly, we conclude that the Department’s decision is not clearly erroneous and, therefore, we reverse the judgment of the circuit court of Winnebago County.

Reversed.

    HUTCHINSON, P.J., and GILLERAN JOHNSON, J., concur.