THE VILLAGE OF OAK PARK *et al.*, Plaintiffs-Appellees, *v.* EDWARD J. ROSEWELL, County Treasurer and *ex-officio* County Collector of Cook County, *et al.*, Defendants-Appellants.

First District (5th Division)   No. 82—1763

Opinion filed June 10, 1983.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey, Thomas J. McNulty, James F. Henry, and Paula M. Becker, Assistant State's Attorneys, of counsel), for appellants.

Klein, Thorpe and Jenkins, Ltd., of Chicago (Gerard E. Dempsey, of counsel), for appellees.

JUSTICE SULLIVAN delivered the opinion of the court:

In an action for injunctive and other relief, an order was entered finding that a parking lot owned by the First Presbyterian Church of Oak Park (the Church) and leased to the Village of Oak Park (the Village) was exempt from general real estate taxes from January 1, 1977, to June 17, 1982, and directing the Cook County Treasurer to refund tax payments made for the years 1976, 1977, and 1978. On appeal, defendants contend that the trial court erred as a matter of law in (1) ruling that the property in question was exempt from real estate taxes, and (2) ordering a refund of taxes voluntarily paid.

The facts of this case are undisputed. The Church owns two adjoining parcels of land located within the Village[1] which it uses as a parking lot in connection with its religious activities from 9 a.m. to 10 p.m. on Sundays. During the balance of the week, the parcels are leased to the Village for use as a municipal parking lot. Pursuant to the terms of the lease, the Church receives one-half of the gross receipts from this use and, from the remaining half, the Village is required to pay the costs of operating and maintaining the lot, including real estate taxes, with the balance of that half, if any, divided equally between the Church and the Village. The monies received by the Church are used for religious purposes, and the share of the monies

---

[1]The first parcel was purchased in 1958 and the second in 1963. The order appealed from concerns only the second parcel.

received by the Village is used for municipal needs.

In 1975, the Village and the Church, plaintiffs herein, sought an injunction restraining collection of real estate taxes levied against the property in question. The trial court granted plaintiffs' motion for summary judgment on September 15, 1977, declaring the property exempt for the years 1973, 1974, 1975, and 1976. That order was not appealed.[2] Subsequently, the Church paid portions of the real estate taxes levied against the property in 1976, 1977, and 1978, and received reimbursement therefor from the Village, pursuant to the lease. In 1981, plaintiffs filed a petition for a supplemental injunction asking that the trial court restrain collection of real estate taxes for the years 1977 through 1981 and order a refund of the taxes paid for that period. The trial court found that the use of the real estate by the Church was an exempt use, and that its use by the Village for a municipal parking lot was likewise exempt. The relief requested was granted, and this appeal followed.

Opinion

Defendants first contend that the trial court erred in ruling that the property in question is exempt from real estate taxation. They argue that the property is not used exclusively for religious purposes, as required by section 19.2 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 500.2), but is leased for profit and therefore taxable. Furthermore, they maintain, the fact that the lessee Village used the property for municipal purposes is irrelevant in determining whether the property is taxable.

■ Initially, we note that the General Assembly has the exclusive power to raise revenue by taxation (Ill. Const. 1970, art. IX, sec. 1) and may exempt "the property of *** units of local government and *** property used exclusively for *** religious *** and charitable purposes" (Ill. Const. 1970, art. IX, sec. 6). Thus, the legislature is not constitutionally required to exempt any property from taxation and may place restrictions or limitations upon those exemptions it chooses to grant. (*North Shore Post No. 21 v. Korzen* (1967), 38 Ill. 2d 231, 230 N.E.2d 833.) Consequently, there is a presumption that no exemption is intended (*Rotary International v. Paschen* (1958), 14 Ill. 2d 480, 153 N.E.2d 4), and the party claiming the exemption has the burden of showing that the property clearly falls within a statutory

---

[2]A supplemental petition seeking an exemption for the other parcel was filed in 1978, and summary judgment for plaintiffs was granted thereon. No appeal was taken from that order.

exemption (*People ex rel. Nordlund v. Association of the Winnebago Home for the Aged* (1968), 40 Ill. 2d 91, 237 N.E.2d 533). Furthermore, we must construe the exemption provisions strictly (*Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 233 N.E.2d 537) and have no power to create an exemption by judicial interpretation (*People ex rel. Baldwin v. Jessamine Withers Home* (1924), 312 Ill. 136, 143 N.E. 414).

In the instant case, the applicable statutory provisions are sections 19.2 and 19.16 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, pars. 500.2, 500.16). Section 19.2 exempts from taxation "all property used exclusively for religious purposes *** and not leased or otherwise used with a view to profit," and section 19.16 expressly extends the exemption to parking areas "not leased or used for profit, when used as a part of a use for which an exemption is provided hereinbefore and owned by any *** religious *** institution which meets the qualifications for exemption." Clearly, then, whether property is exempt under these provisions is determined by its primary use (*People ex rel. Marsters v. Rev. Saletyni Missionaries, Inc.* (1951), 409 Ill. 370, 99 N.E.2d 186) and not by the fact that it is owned by a qualifying nonprofit institution (*Turnverein "Lincoln" v. Board of Appeals* (1934), 358 Ill. 135, 192 N.E. 780). However, the exclusivity restriction has never been given an unreasonably narrow interpretation, and where otherwise exempt property is leased to further the nonprofit, exempt purposes of the institution, the fact that the lease yields an income or an incidental profit will not defeat an exemption (*People ex rel. Goodman v. University of Illinois Foundation* (1944), 388 Ill. 363, 58 N.E.2d 33; *People ex rel. Hesterman v. North Central College* (1929), 336 Ill. 263, 168 N.E. 269). Conversely, where property is leased with a view to profit, it is immaterial whether the income derived is used for religious purposes (*People ex rel. Baldwin v. Jessamine Withers Home*); in fact, it is irrelevant whether the lease actually generates a profit or a loss, or the revenues are totally offset by operational or maintenance costs (*Turnverein "Lincoln" v. Board of Appeals*).

Here, the record indicates that the property in question was leased to the Village with a view to profit rather than to furthering some religious purpose of the Church. Plaintiffs do not argue that it is the Church's ownership of the property, or its use of the funds generated for religious purposes, or its use of the lot on Sundays which provides a basis for exemption here. Instead, they rely on the Village's use of the land for municipal purposes during the balance of the week to justify a total exemption of the property from real estate

taxes. They assert that so long as all uses of the property are exempt, it is immaterial that the Church is receiving a profit from the lease. In support thereof, plaintiffs cite *Childrens Development Center, Inc. v. Olson* (1972), 52 Ill. 2d 332, 288 N.E.2d 388, where property owned by a religious institution was leased to a not-for-profit corporation which provided programs for educationally handicapped children and qualified as a charitable institution. Although the religious institution received a profit, the supreme court looked to "the primary use to which the property [was] devoted *after* the leasing" (emphasis added) (52 Ill. 2d 332, 336, 288 N.E.2d 388, 391) in determining whether the property's tax-exempt status should continue. Since the primary use after leasing was serving a tax-exempt charitable purpose of the lessee, the court ruled that the property remained tax exempt.

■■ Plaintiffs contend that the facts of the present case are analogous. Although the Church leases the property for a profit, the Village uses the property for a municipal purpose which, they maintain, is tax exempt. However, we believe that this case is distinguishable. In *Childrens Development Center*, the lessee came within section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 500.7), which exempts from taxation all property "actually and exclusively used for *** charitable or beneficient purposes, and not leased or otherwise used with a view to profit." The section 19.7 exemption, like that in section 19.2 for religious institutions, turns on the primary use of the property. Unlike those provisions, the exemption provided for municipalities turns solely on ownership of the property. Section 19.6 of the Revenue Act of 1939 provides in relevant part for exemption of "all property owned by any city or village located within the incorporated limits thereof, except such as heretofore has been leased or may hereafter be leased by such city or village to lessees who are bound under the terms of the lease to pay the taxes on such property." (Ill. Rev. Stat. 1981, ch. 120, par. 500.6.) That use of leased land for municipal purposes does not provide an exemption is evident from *People ex rel. Carr v. City of Chicago* (1926), 323 Ill. 68, 153 N.E. 725. There, the city leased land which was used for public playgrounds, police department buildings, a fire station, and a hospital. Although all of the land served municipal purposes, the supreme court held that it was ownership, not use, which determined exemption. It appears, then, that there is no separate exemption of land used for municipal purposes, as plaintiffs contend. If we were to adopt plaintiffs' position, we would add to section 19.6 of the Revenue Act of 1939 an exemption clearly not within its contemplation. Therefore, we believe that *Childrens Development Center* is inapplicable to the situation be-

fore us and that plaintiffs have failed to demonstrate any facts which would bring the property within a statutory exemption from taxation. In view of our disposition of this first contention of defendants, we need not reach their second contention.

For the foregoing reasons, the order of the trial court is reversed and this matter is remanded, and the trial court is directed to deny the relief requested.

Reversed and remanded with a direction.

WILSON, P.J., and LORENZ, J., concur.